Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com

Michael S. Budwick, Esq. #938777 – Admitted *Pro Hac Vice*
Solomon B. Genet, Esq. #617911 – Admitted *Pro Hac Vice*
Meaghan E. Murphy, Esq. #102770 – Admitted *Pro Hac Vice*
Alexander E. Brody, Esq. #1025332 – Admitted *Pro Hac Vice*
**MELAND BUDWICK, P.A.**
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
T: (305) 358-6363
F: (305) 358-1221
mbudwick@melandbudwick.com
sgenet@melandbudwick.com
mmurphy@melandbudwick.com
abrody@melandbudwick.com

*Attorneys for Christina Lovato, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>DOUBLE JUMP, INC.<br><br>Debtor. | Lead Case No.: BK-19-50102-gs<br>(Chapter 7)<br><br>Substantively consolidated with:<br><br>19-50130-gs — DC Solar Solutions, Inc.<br>19-50131-gs — DC Solar Distribution, Inc.<br>19-50135-gs — DC Solar Freedom, Inc. |
| CHRISTINA W. LOVATO,<br><br>Plaintiff,<br><br>v.<br><br>JCB CONSULTING, INC. fka J&C CONSULTING, INC.; and CARRIE SUE BODEN-CARPOFF aka CAROLINE SUE BODEN-CARPOFF aka CARRIE CARPOFF aka CARRIE BODEN,<br><br>Defendants. | Adversary No.: 21-05036-gs<br><br>**TRUSTEE'S SUPPLEMENTAL BRIEF AND REQUEST FOR LEAVE TO FILE AN AMENDED COMPLAINT IN CONNECTION WITH THIS COURT'S ORDER AT ECF NO. 22**<br><br>Hearing Date: March 31, 2022<br>Hearing Time: 9:30 a.m. |

Christina W. Lovato, as plaintiff and chapter 7 trustee ("***Trustee***" or "***Plaintiff***") for the substantively consolidated bankruptcy estates of DC Solar Solutions, Inc., DC Solar Distribution, Inc., DC Solar Freedom, Inc., and Double Jump, Inc. (together, "***DC Solar***" or the "***Debtors***"),

1

files her Supplemental Brief and Request for Leave to File an Amended Complaint ("**Brief and Request**"), in accordance with this Court's Order at ECF No. 22 ("**Order**").

## PRELIMINARY STATEMENT

The Trustee filed this adversary proceeding to avoid and recover certain transfers made from DC Solar to and/or for the benefit of defendants JCB Consulting, Inc. fka J&C Consulting, Inc. ("**J&C**" or "**JCB**" or "**Defendant**") and Carrie Sue Boden-Carpoff aka Caroline Sue Boden-Carpoff aka Carrie Carpoff aka Carrie Boden ("**Ms. Boden**"). The Trustee has since dismissed Ms. Boden as a defendant. [ECF No. 12].

In accordance with this Court's Order, the Trustee files her Brief and Request, respectfully requesting leave to file an amended complaint against J&C.

## PROCEDURAL BACKGROUND

Between January 31 and February 5, 2019 ("**Petition Date**"), the Debtors filed their voluntary chapter 11 petitions. On March 22, 2019, the Debtors' chapter 11 bankruptcy cases were converted to chapter 7 and the Trustee was appointed as the chapter 7 trustee.

On January 28, 2021, the Trustee filed her complaint commencing this adversary proceeding against the defendants. ECF No. 1. The Trustee then dismissed Ms. Boden as a defendant. [ECF No. 12]. J&C has failed to respond to the complaint.

Upon the Trustee's request, the Clerk entered a default against J&C. ECF Nos. 17, 18, & 19. Thereafter, the Trustee filed her motion for default final judgments with an affidavit in support. ECF Nos. 20 & 21.

On March 21, 2022, this Court entered its Order.

## THE FACTS

The Trustee alleges the following facts in the Complaint, all of which are required to be taken as true and with all reasonable inferences drawn in the Trustee's favor.[1]

A. DC Solar and the Carpoff Ponzi Scheme

DC Solar was engaged in a business related to manufacturing, marketing, selling, and

---

[1] *See* Legal Standard, below.

2

leasing mobile solar generators ("*MSGs*").[2] Generally, the business purported to work as follows: Debtor-DCSS would manufacture and sell MSGs for $150,000 each. The buyers were typically tax equity funds owned by a financial investor seeking investment federal tax credits. The buyers paid DCSS a down payment and executed a promissory note for the remaining balance of the purchase price. The buyers would lease the MSGs to DCSS's affiliate, DCSD, which in turn purported to sub-lease the MSGs to a third-party end-user/sub-lessee. The end-user's/sub-lessee's lease payments were intended to cover the interest payments on the promissory note.[3] Over the years, DCSS closed over two dozen transactions, purportedly selling over 15,000 MSGs and generating hundreds of millions of dollars of revenue.[4]

However, certain of DC Solar's former insiders, including Jeff Carpoff and Paulette Carpoff ("*Carpoffs*"), were also perpetrating a Ponzi scheme through DC Solar and other entities.[5]

> The Carpoffs caused DC Solar to transfer monies obtained from new buyers of MSGs to cover obligations owed to earlier buyers. This was contrary to the Carpoffs' representations (directly or indirectly) to the financial investors that sub-lessee revenue would pay those obligations. Moreover, the Carpoffs (directly or indirectly) communicated to the financial investors that DC Solar had manufactured over 15,000 MSGs, the actual figure was far less. Moreover, although the Carpoffs (directly or indirectly) represented to the financial investors that DC Solar had a series of sub-lessees willing to pay to utilize the MSGs, some sub-leases were real but others were not.

Further, the Carpoffs looted DC Solar to, among other things, fund their own lavish lifestyle, including through casino gambling and the use of private jets and the purchase of real and personal property (such as automobiles). And the Carpoffs looted DC Solar to, among other things, pay-off co-conspirators and make payments such as marketing payments (legitimate or illegitimate) to third-parties. This all was intended, in material part, to further the Carpoff Ponzi Scheme and/or create the perception that DC Solar was profitable.[6]

B. J&C and Carpoff's Looting of DC Solar

---

[2] Complaint, ¶ 8.
[3] Complaint, ¶ 9.
[4] Complaint, ¶ 13.
[5] Complaint, ¶ 14.
[6] Complaint, ¶¶ 15-16.

3

As explained in the Trustee's complaint, Carpoff perpetrated a Ponzi scheme through DC Solar and looted DC Solar for his own personal benefit as part of his Ponzi scheme.

The Trustee further alleged in her complaint that Carpoff worked with King Solarman to loot DC Solar, and in doing so, caused DC Solar to transfer monies to King Solarman with the understanding that a material portion of these monies would then be transferred to J&C for Carpoff's benefit.[7] Indeed, the Trustee alleges that although Ms. Boden – Carpoff's sister – was the nominal sole officer and owner of J&C, Carpoff had control over the entity.[8] And further, that the monies funded by King Solarman were actually used by J&C for Carpoff's individual benefit and for his family members' benefit.[9] And further, that the Trustee has claims against and is a creditor of King Solarman.[10]

However, the Trustee acknowledges the Court's concern that the Trustee's complaint is "confusing." Order at pg. 3. And that the Trustee may have insufficiently tied together in her complaint the facts supporting the Trustee's claims and the transfers she seeks to avoid and recover, as well as her other requested relief.

The Trustee can plead in an amended complaint, among other things, facts relating to: (1) the transfers; (2) J&C, as a slush fund for Carpoff and his personal interests; (3) Ms. Boden; and (4) King Solarman; which demonstrates that DC Solar had claims against King Solarman in tort and against a transferee of King Solarman in avoidance. And the Trustee can plead facts that support her ability to avoid and recover transfers made to J&C pursuant to 11 U.S.C. §§ 541, 544, 548 & 550 and Ca. Civil Code §§ 3439.04, .07, & .08, and other applicable law and requested relief.

**THE COURT'S CONCERN AS TO THE PROPER PARTIES
TO THE ADVERSARY PROCEEDING**

In its Order, the Court also identified its concern as to whether the Trustee can recover against J&C where the Trustee did not include King Solarman as a party in this adversary

---

[7] Complaint, ¶¶ 26-31.
[8] Complaint, ¶¶ 24-25.
[9] Complaint, ¶¶ 34-35.
[10] Complaint, ¶¶ 23, 25, 26-33.

4

proceeding. Order, pg. 3. The Trustee can address this matter further, as necessary, following the filing of an amended complaint (if permitted by the Court), but her position is that J&C is the only necessary party. *See Sanger v. Ahn*, 2019 WL 1229660, *4 (N.D. Cal. Mar. 15, 2019) ("California authority indicates that an alleged fraudulent transferor is not a necessary party in an action against a transferee to void the transfer.") *citing Liuzza v. Bell*, 40 Cal. App. 2d 417, 425 (1940) & *Blanc v. Paymaster Mining Co.*, 95 Cal. 524, 30 P. 765 (1892); *see also In re AVI, Inc.*, 389 B.R. 721, 735 (B.A.P. 9th Cir. 2008) ("[W]e conclude that Congress intended avoidance as one remedy and recovery as another. Thus, we hold that a trustee is not required to avoid the initial transfer from the initial transferee before seeking recovery from subsequent transferees under § 550(a)(2)."); *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 706 (11th Cir. 2005).

## LEGAL STANDARD

Granting a motion for default judgment is within this Court's discretion.[11] In *Eitel*,[12] the Ninth Circuit enumerated the following seven factors that this Court may consider in exercising its discretion and determining whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the substantive claim; (3) the sufficiency of the complaint; (4) the amount of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the policy underlying the F.R.C.P. favoring a decision on the merits.[13]

> Once a court determines that the defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. [] In addition, the party seeking entry of the default judgment is entitled to have all reasonable inferences from well-pleaded allegations in the complaint drawn in its favor.[14]

## APPLICATION OF THE *EITAL* FACTORS

In this Court's Order, this Court stated that "[i]n this instance, the court is concerned with the merits of the plaintiff's substantive claim and the sufficiency of the complaint." Order, pg. 2.

---

[11] *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).
[12] *Eital v. McCool*, 782 F.2d 1470, 71-72 (1986) (citations omitted).
[13] *Id.*
[14] *In re SK Foods, LP*, 499 B.R. 809, 834 (Bankr. E.D. Cal. 2013).

5

Accordingly, the Trustee begins with the factors which do not appear to be the focus of the Court's concern, and then closes with the factors (Nos. 2 & 3) which do concern the Court.

But as stated above, the Trustee requests leave to file an amended complaint to address this Court's concerns.

Factor No. 1 - Possibility of Prejudice.

"A plaintiff is prejudiced if, absent the entry of judgment, he will be left without a remedy."[15] Here, if the Trustee's motion for default judgment is not granted, the Trustee will likely be without other recourse for recovery because J&C has been served with the Trustee's complaint and has not responded. Therefore, this factor is satisfied.

Factor No. 4 - Amount at Stake

"[W]here the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate."[16] The Trustee seeks to recover specific amounts transferred in furtherance of a Ponzi scheme, and not an arbitrary amount. The Trustee identifies the transfers with specificity in her complaint (including transferor, transferee, amount, and date) and is supported by affidavit. Thus, this factor weighs in favor of a default judgment.

Factor No. 5 - Possibility of Dispute

"Upon entry of default, all facts pleaded in the complaint are taken as true, except those relating to damages," and the "failure to appear" shows that it is "unlikely" that a defendant "could dispute some or all of the material facts."[17] Here, J&C has not appeared, thus demonstrating that it is unlikely it would or could dispute the Trustee's allegations in her complaint.

Factor No. 6 - Possibility of Excusable Neglect

The sixth factor considers the possibility that the default resulted from excusable neglect.[18] "There is no indication of excusable neglect" when the defendant has "simply ignored the

---

[15] *L.A. Gem and Jewelry Design, Inc. v. Groupon, Inc., et al.*, 2021 WL 4691151, *5 (C.D. Cal. Aug. 25, 2021).
[16] *In re Tina Chi Houng*, 2012 WL 6052037, *6
[17] *L.A. Gem and Jewelry Design*, 2021 WL 4691151, *7.
[18] *PepsiCo,* 238 F. Supp. 2d at 1177.

6

Summons."[19] Here, J&C was properly served with the summons and the complaint. There is no evidence of excusable neglect.

### Factor No. 7 - Policy for Deciding on the Merits

Although cases should be decided upon their merits whenever possible, this is impossible where a defendant fails to defend an action.[20] Further, "the preference to decide cases on the merits does not preclude a court from granting default judgment."[21] Here, J&C chose not to defend this action, and default final judgment is appropriate.

### Factors Nos. 2 & 3 - Substantive Merits and Sufficiency of the Complaint

"The second and third *Eitel* factors overlap because a plaintiff must properly state a claim and the allegations contained in the complaint are deemed true. Thus, if the complaint is sufficient, a plaintiff's substantive claim has merit for purposes of a request for the entry of a default judgment."[22] As noted above and as set forth in the Order, these items are the Court's focus.

Here, while the Trustee submits that she has adequately pled the transfers, including the date, amount, transferor, and transferee, and that she has a claim against King Solarman that entitles her to avoid transfers made by King Solarman to JCB, and that she may recover against JCB as a subsequent transferee, she acknowledges that there may be confusion arising from the Trustee's pleading of the complaint and their connection to the Trustee's claims for relief.

Moreover, the Trustee acknowledges the lack of specific information in her motion for default judgment, which relies on the complaint.

## REQUEST FOR LEAVE TO FILE AN AMENDED COMPLAINT

F.R.C.P. 15(a), made applicable by F.R.B.P. 7015, instructs that leave to file an amended complaint be "freely given when justice so requires." This policy is "to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.2001) (quotations omitted). The Trustee respectfully requests leave to file an amended complaint.

---

[19] *J&J Sports Prod., Inc. v. Tacos La Palma, LLC*, 2013 WL 3944132, *2 (D. Nev. July 30, 2013).
[20] *PepsiCo,* 238 F. Supp. 2d at 1177.
[21] *Id.*
[22] *L.A. Gem and Jewelry Design*, 2021 WL 4691151, *5.

The most important factor in this analysis, *i.e.,* whether there is prejudice to the opposing party, weighs heavily in favor of allowing leave to amend. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Prejudice is the touchstone of the inquiry under rule 15(a).") (quotations omitted). J&C did not respond to the Trustee's original complaint and therefore will not be prejudiced by the Trustee's filing of an amended complaint. In addition, this is the Trustee's first request for leave to amend, there is no evidence she has acted in bad faith or for purposes of delay, and amendment will not be futile.

As to this final point, the Trustee intends to plead an amended complaint (if permitted by the Court) in a less confusing manner. The Trustee intends to plead, with clarity and fact-specificity: (1) that the Trustee possesses claims against King Solarman in connection with its participation with Carpoff in looting DC Solar, which was a primary purpose of the Carpoff Ponzi Scheme; (2) that the transfers made from DC Solar to King Solarman; (3) that the transfers made from King Solarman to J&C; (4) connections between and among the entities, the transfers, Carpoff and his family members, and the Carpoff Ponzi Scheme.

These facts, and others which the Trustee can and intends to plead in an amended complaint, can and will show satisfaction of the elements of the Trustee's claims, in a non-confusing manner, as well as further support her requested relief.

## CONCLUSION

For the reasons set forth above, the Trustee requests leave to file an amended complaint.

DATED: March 25, 2022.

**HARTMAN & HARTMAN**

/s/Jeffrey L.Hartman, Esq.
Jeffrey L. Hartman, Esq.
*Attorney for Trustee Christina W. Lovato*

**MELAND BUDWICK, P.A.**

/s/ Solomon B. Genet, Esq.
Michael S. Budwick, Esq.
Solomon B. Genet. Esq.
Meaghan E. Murphy, Esq.
Alexander E. Brody, Esq.
*Attorney for Trustee Christina W. Lovato*

8

# CERTIFICATE OF SERVICE

I certify that on March 25, 2022, I caused to be served the following document(s):

**TRUSTEE'S SUPPLEMENTAL BRIEF AND REQUEST FOR LEAVE TO FILE AN AMENDED COMPLAINT IN CONNECTION WITH THIS COURT'S ORDER AT ECF NO. 22**

I caused to be served the above-named document(s) as indicated below:

I caused to be served the above-named document(s) as indicated below:

✔ a. Via ECF to:

   ALEXANDER E. BRODY abrody@melandbudwick.com,

   ltannenbaum@melandbudwick.com;ltannenbaum@ecf.courtdrive.com ;

   mrbnefs@yahoo.com

   MICHAEL S. BUDWICK   mbudwick@melandbudwick.com,

   ltannenbaum@melandbudwick.com;ltannenbaum@ecf.courtdrive.com

   SOLOMON B. GENET     sgenet@melandbudwick.com,

   ltannenbaum@melandbudwick.com; ltannenbaum@ecf.courtdrive.com

   JEFFREY L. HARTMAN     notices@bankruptcyreno.com,

   abg@bankruptcyreno.com

   CHRISTINA W. LOVATO    trusteelovato@att.net, NV26@ecfcbis.com

✔ b. Via U.S. Mail, postage prepaid, addressed to:

   JCB Consulting, Inc. f/k/a J&C Consulting, Inc.
   By and through its Registered Agent
   Adam I. Miller
   18301 Von Karman Avenue, Suite 950
   Irvine, CA 92612

I declare under penalty of perjury that the foregoing is true and correct.

DATED: March 25, 2022.

                    /s/ Solomon B. Genet, Esq.
                    Solomon B. Genet, Esq.