Jeffrey L. Hartman, Esq.  
Nevada Bar No. 1607  
**HARTMAN & HARTMAN**  
510 W. Plumb Lane, Suite B  
Reno, NV 89509  
T: (775) 324-2800  
F: (775) 324-1818  
notices@bankruptcyreno.com  

Michael S. Budwick, Esq. #938777 – Admitted *Pro Hac Vice*  
Solomon B. Genet, Esq. #617911 – Admitted *Pro Hac Vice*  
Meaghan E. Murphy, Esq. #102770 – Admitted *Pro Hac Vice*  
Gil Ben-Ezra, Esq. #118089 – Admitted *Pro Hac Vice*  
Alexander E. Brody, Esq. #1025332 – Admitted *Pro Hac Vice*  
**MELAND BUDWICK, P.A.**  
3200 Southeast Financial Center  
200 South Biscayne Boulevard  
Miami, Florida 33131  
T: (305) 358-6363  
F: (305) 358-1221  
mbudwick@melandbudwick.com  
sgenet@melandbudwick.com  
mmurphy@melandbudwick.com  
gbenezra@melandbudwick.com  
abrody@melandbudwick.com  

*Attorneys for Christina Lovato, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>DOUBLE JUMP, INC.<br><br>    Debtor. | Lead Case No.: BK-19-50102-gs<br>(Chapter 7)<br><br>Substantively consolidated with:<br><br>  19-50130-gs    DC Solar Solutions, Inc.<br>  19-50131-gs    DC Solar Distribution, Inc.<br>  19-50135-gs    DC Solar Freedom, Inc. |
| CHRISTINA W. LOVATO,<br><br>    Plaintiff,<br><br>v.<br><br>JCB CONSULTING, INC. fka J&C CONSULTING, INC.; and CARRIE SUE BODEN-CARPOFF aka CAROLINE SUE BODEN-CARPOFF aka CARRIE CARPOFF aka CARRIE BODEN,<br><br>    Defendants. | Adversary No.: 21-05036-gs<br><br>**TRUSTEE'S EX PARTE REQUEST FOR ENTRY OF DEFAULT JUDGMENT PURSUANT TO F.R.CIV.P 55(b) AND F.R.BANKR.P. 7055**<br><br>Hearing Date: N/A<br>Hearing Time: N/A |

Christina W. Lovato, as plaintiff and chapter 7 trustee ("***Trustee***" or "***Plaintiff***") for the substantively consolidated bankruptcy estates of DC Solar Solutions, Inc. ("***DCSS***"), DC Solar

1

Distribution, Inc. ("**DCSD**"), DC Solar Freedom, Inc. ("**DCSF**", and with DCSD and DCSS, "**DC Solar**") and Double Jump, Inc. ("**DJ**," and with DC Solar, the "**Debtors**"), files her Request for Entry of Default Judgment Pursuant to F.R.C.P. 55(b) and F.R.B.P. 7055.

### PRELIMINARY STATEMENT

The Trustee filed this adversary proceeding to avoid and recover certain transfers made from DC Solar for the benefit of defendants JCB Consulting, Inc. fka J&C Consulting, Inc. ("**J&C**" or "**Defendant**") and Carrie Sue Boden-Carpoff aka Caroline Sue Boden-Carpoff aka Carrie Carpoff aka Carrie Boden ("**Boden**"). The Trustee has since dismissed Boden as a defendant [ECF No. 12] and filed an amended complaint against J&C ("**Amended Complaint**") [ECF No. 32].

The Defendant was properly served the Summons and the Amended Complaint and failed to respond. Accordingly, the Clerk of Court entered default. Now, the Trustee seeks and respectfully requests a default final judgment against the Defendant.

### PROCEDURAL BACKGROUND

Between January 31 and February 5, 2019 ("**Petition Date**"), the Debtors filed their voluntary chapter 11 petitions. On March 22, 2019, the Debtors' chapter 11 bankruptcy cases were converted to chapter 7 and the Trustee was appointed as the chapter 7 trustee.

On January 28, 2021, the Trustee filed her complaint commencing this adversary proceeding against the defendants. [ECF No. 1]. The Trustee then dismissed Boden as a defendant. [ECF No. 12].

On May 17, 2022, the Trustee filed her Amended Complaint. [ECF No. 32]. J&C has failed to respond to the Amended Complaint.

2

On June 28, 2022, the Trustee submitted her Request for Entry of Default Judgment [ECF No. 38] ("***Request for Default***") and the Affidavit of Solomon B. Genet in Support of the Request for Default [ECF No. 39]. On June 29, 2022, the Clerk of Court entered default against the Defendant. [ECF No. 40].

## BACKGROUND FACTS

The Trustee alleges the following facts in the Amended Complaint, all of which are required to be taken as true and with all reasonable inferences drawn in the Trustee's favor.[1]

A. <u>DC Solar and the Carpoff Ponzi Scheme</u>

DC Solar was engaged in a business related to manufacturing, marketing, selling, and leasing mobile solar generators ("***MSGs***").[2] Generally, the business purported to work as follows: Debtor-DCSS would manufacture and sell MSGs for $150,000 each. The buyers were typically tax equity funds, 95% owned by a financial investor seeking investment federal tax credits. The buyers would provide DCSS a $45,000 down-payment (30% of the total purchase price) and execute a promissory note for the remaining balance. The buyers would lease the MSGs to DCSS's affiliate DCSD, which in turn purported to sub-lease the MSG to an end-user/sub-lessee. The end-user's/sub-lessee's lease payments were intended to cover the interest payments on the promissory note.[3] Over the years, DC Solar closed over two dozen transactions, purportedly selling over 15,000 MSGs and generating hundreds of millions of dollars of revenue.[4]

However, certain of DC Solar's former insiders, including Jeff and Paulette Carpoff ("***Carpoffs***"), were also perpetrating a Ponzi scheme through DC Solar and other entities.[5]

> The Carpoffs caused DC Solar to transfer monies obtained from new buyers of MSGs to cover obligations owed to earlier buyers. This was contrary to the Carpoffs' representations to the financial investors that sub-lessee revenue would pay those obligations. Moreover, the Carpoffs misrepresented to the financial

---

[1] *See* Legal Standard, below.
[2] Amended Complaint, ¶ 6.
[3] Amended Complaint, ¶ 9.
[4] Amended Complaint, ¶ 13.
[5] Amended Complaint, ¶ 14.

investors the number of MSGs that DC Solar manufactured, ultimately claiming in 2018 that the figure exceeded 15,000 when it was actually far less. Moreover, although the Carpoffs represented to the financial investors that DC Solar had a series of sub-lessees willing to pay to utilize the MSGs, some sub-leases were real, but others were not.[6]

Further, the Carpoffs looted DC Solar to, among other things, fund their own lavish lifestyle, including through casino gambling, buying a semi-pro baseball team, the use of private jets and the purchase of real and personal property (such as automobiles). And the Carpoffs looted DC Solar to, among other things, pay-off co-conspirators and make payments such as marketing payments (legitimate or illegitimate) to third parties. This all was intended, in material part, to further the Carpoff Ponzi Scheme and/or create the perception that DC Solar was profitable.[7]

B. <u>Carpoff's Looting of DC Solar Using J&C and King Solarman</u>

As explained in the Trustee's Amended Complaint, Carpoff perpetrated a Ponzi scheme through DC Solar and looted DC Solar for his own personal benefit as part of his Ponzi scheme. One aspect of this looting scheme involved King Solarman, Inc. ("**King Solarman**") and J&C, two parties with whom Carpoff had a close affiliation. King Solarman is purportedly a seller of solar panels and its principal, Michael Cung, was Jeff Carpoff's good friend.[8] And J&C's President, CEO, CFO, and Secretary was Boden,[9] who is Jeff Carpoff's sister.[10]

J&C was incorporated on or around April 23, 2013. Boden served as J&C's nominal owner, operated J&C on Jeff Carpoff's behalf, and opened bank accounts in J&C's name which Jeff Carpoff controlled, and to which he could direct funds looted from DC Solar.[11]

Beginning no later than January 2014, King Solarman and Jeff Carpoff conspired to loot DC Solar. King Solarman agreed to fraudulently issue invoices to DC Solar: (1) that charged inflated prices exceeding the value of certain goods King Solarman provided to DC Solar; and

---

[6] Amended Complaint, ¶ 15.
[7] Amended Complaint, ¶ 16.
[8] Amended Complaint, ¶ 24.
[9] *Id*.
[10] *Id*.
[11] Amended Complaint, ¶ 25.

4

(2) invoiced DC Solar for goods and services that it never provided.[12] Their crooked arrangement continued, that after Jeff Carpoff caused DC Solar to pay the fraudulent invoices, King Solarman would transfer (*i.e.,* kickback) a portion to, among others, J&C.[13]

As further evidence of their corrupt agreement and wrongdoing, on or around October 4, 2016, King Solarman, Michael Cung, J&C, Boden, and Jeff Carpoff concealed the nature of the transfers from DC Solar-to-King Solarman-to-J&C by having King Solarman and J&C execute a backdated and sham consulting agreement.[14]

## LEGAL STANDARD

Granting a motion for default judgment is within this Court's discretion.[15] In *Eitel*,[16] the Ninth Circuit enumerated the following seven factors that this Court may consider in exercising its discretion and determining whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the substantive claim; (3) the sufficiency of the complaint; (4) the amount of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the policy underlying the F.R.C.P. favoring a decision on the merits.[17]

> Once a court determines that the defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. [] In addition, the party seeking entry of the default judgment is entitled to have all reasonable inferences from well-pleaded allegations in the complaint drawn in its favor.[18]

## APPLICATION OF THE *EITEL* FACTORS

Here, the *Eitel* factors weigh in favor of entry of default judgment against the Defendant.

Factor No. 1 - Possibility of Prejudice

"A plaintiff is prejudiced if, absent the entry of judgment, he will be left without a

---

[12] Amended Complaint, ¶ 26.
[13] Amended Complaint, ¶ 27.
[14] Amended Complaint, ¶ 32.
[15] *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).
[16] *Eitel v. McCool*, 782 F.2d 1470, 71-72 (1986) (citations omitted).
[17] *Id.*
[18] *In re SK Foods, LP*, 499 B.R. 809, 834 (Bankr. E.D. Cal. 2013).

remedy."[19] Here, if the Trustee's motion for default judgment is not granted, the Trustee will likely be without other recourse for recovery because the Defendant has been served with the Trustee's Amended Complaint and has not responded. Therefore, this factor is satisfied.

<u>Factor Nos. 2 & 3 - Substantive Merits and Sufficiency of the Amended Complaint</u>

"The second and third *Eitel* factors overlap because a plaintiff must properly state a claim and the allegations contained in the complaint are deemed true. Thus, if the complaint is sufficient, a plaintiff's substantive claim has merit for purposes of a request for the entry of a default judgment."[20] Here, the Trustee has properly stated claims to avoid and recover actual fraudulent transfers, which therefore weighs in favor of granting a default judgment.[21]

The Trustee has adequately stated her claims for avoidance and recovery of the J&C Transfers (as defined in the Amended Complaint) under 11 U.S.C. §§ 544, 548, & 550 and applicable California state law.

<u>First</u>, the Trustee has pled, with specificity, the (1) date, (2) amount, (3) transferor, and (4) transferee for each of the transfers at issue. *See* Amended Complaint, ¶ 31 & <u>Exhibit 1</u>.

<u>Second</u>, the Trustee has pled, with specificity: (1) the existence of the Carpoff Ponzi Scheme; (2) an explanation of the Carpoff Ponzi Scheme; (3) the looting scheme perpetrated by Carpoff, Cung, King Solarman, Boden, and J&C; (4) how J&C and King Solarman were each connected to the Carpoff Ponzi Scheme; (5) that J&C was nominally owned by Boden, Carpoff's sister; (6) that J&C provided no value to DC Solar in connection with the transfers; and (7) that

---

[19] *L.A. Gem and Jewelry Design, Inc. v. Groupon, Inc., et al.*, 2021 WL 4691151, *5 (C.D. Cal. Aug. 25, 2021).
[20] *L.A. Gem and Jewelry Design*, 2021 WL 4691151, *5.
[21] *See also In re Tina Chi Houng*, 2012 WL 6052037, at *7 (B.A.P. 9th Cir. Dec. 6, 2012), *aff'd sub nom. In re Houng*, 593 Fed. Appx. 714 (9th Cir. 2015) (stating that the "interwoven" second, third, and fifth elements were satisfied because the Trustee's claim for fraudulent transfer "was both sufficiently stated in the complaint and meritorious" and the defendant did not dispute material facts despite having the opportunity to do so).

the transfers were made in furtherance of or related to the Ponzi scheme. *See In re AFI Holding, Inc.*, 525 F. 3d 700, 704 (9th Cir. 2008) ("Furthermore, 'the mere existence of a Ponzi scheme' is sufficient to establish actual intent under § 548(a)(1) or a state's equivalent to that section.") (quotations and citations omitted); *Schneider v. Barnard*, 508 B.R. 533, 545 (E.D.N.Y. 2014) ("Surely transfers that enable a Ponzi scheme operator to profit from her own Ponzi scheme, and thereby perpetuate such a scheme, are 'in furtherance of' a Ponzi scheme."); *In re DBSI, Inc.*, 476 B.R. 413, 422 (Bankr. D. Del. 2012) (the trustee need only prove that the transfers "were related to or in furtherance of" the fraudulent scheme); *Bash v. Textron Fin. Corp.*, 524 B.R. 745, 758 (N.D. Ohio 2015) ("The Court finds that the 'in furtherance of' element does not pose a difficult hurdle once a Ponzi scheme is established. This is because, by its very nature, Ponzi schemes are destined to collapse. Thus, unless the transfers are wholly apart from the Ponzi scheme, the transfer will in all likelihood contribute to the scheme in some fashion.").

Indeed, the Trustee has pled that Jeff Carpoff was the primary perpetrator of the Ponzi scheme, that the looting scheme was in connection with and part of (in fact, a primary purpose of) the Ponzi scheme, and that Jeff Carpoff was closely affiliated with (1) the transferor (DCSD and DCSS); (2) the transferee/transferor (King Solarman, whose principal, Cung, was Carpoff's "good friend"), that received the money from DC Solar and "kicked-back" a portion to J&C; and (3) J&C, owned by Boden but operated at Carpoff's direction. And further, that Jeff Carpoff caused DC Solar to transfer tens of millions of dollars to King Solarman (<u>Exhibit 1</u>) with the intent that a portion of those funds be transferred to J&C and looted from DC Solar.

Thus, the Trustee has adequately pled (with all facts taken as true and all inferences in her favor) avoidance of the transfers as actually fraudulent.

<u>Third</u>, the Trustee has adequately stated her claims for recovery of the transfers under 11

U.S.C. § 550(a) against J&C, *i.e.,* that (1) the transfers were made for J&C's benefit; and (2) that J&C is liable as a subsequent transferee. J&C has strict liability for the avoided transfers.[22]

> The Ninth Circuit Bankruptcy Appellate Panel ("BAP") has held that <u>a trustee need not avoid a transfer from the initial transferee under § 549 before seeking to recover from a subsequent transferee under § 550</u>. To hold otherwise "conflates [the Code's] avoidance and recovery sections." *In re AVI, Inc.*, 389 B.R. 721, 734 (B.A.P. 9th Cir. 2008). <u>In so holding, the BAP stated that "a trustee who demonstrates that a transfer is avoidable 'may seek to recover against any transferee, initial or immediate, or an entity for whose benefit the transfer is made.'"</u> *Id.*; *see also Matter of Walldesign, Inc.*, 872 F.3d 954, 962 (9th Cir. 2017) (When a trustee has proven the avoidability of a transfer, the Ninth Circuit has interpreted § 550(a) to provide trustees "an absolute right of recovery against the 'initial transferee' and any 'entity for whose benefit such transfer was made.'") (quoting *Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F. 2d 544, 547 (9th Cir. 1991)).[23]

The identical analysis applies to Section 548 claims, and thus the Trustee may recover from J&C both (1) as the party for whose benefit the transfers were made; and (2) as the subsequent transferee; without first avoiding the transfers from DC Solar to King Solarman.

The Trustee has sufficiently stated her claims and the second and third *Eitel* factors favor granting the Trustee default judgment.

Factor No. 4 - Amount at Stake

"[W]here the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate."[24] The Trustee seeks to recover specific amounts transferred in furtherance of a Ponzi scheme, and not an arbitrary amount. The Trustee identifies the transfers with specificity in her Amended Complaint (including transferor, transferee, amount, and date) and is supported by affidavit. Thus, this factor weighs in favor of a default judgment.

---

[22] 11 U.S.C. § 550; *In re ContinuityX, Inc.*, 582 B.R. 124, 137 (Bankr. S.D.N.Y. 2018).
[23] *In re Lemmons*, 604 B.R. 888, 893 (Bankr. D. Idaho 2019) (emphasis added); *In re DBSI Inc.*, 593 B.R. 795, 823 (Bankr. D. Idaho 2018).
[24] *In re Tina Chi Houng*, 2012 WL 6052037, *6.

8

### Factor No. 5 - Possibility of Dispute

"Upon entry of default, all facts pleaded in the complaint are taken as true, except those relating to damages," and the "failure to appear" shows that it is "unlikely" that a defendant "could dispute some or all of the material facts."[25] Here, the Defendant has not appeared, thus demonstrating that it is unlikely it would or could dispute the Trustee's allegations in her Amended Complaint.

### Factor No. 6 - Possibility of Excusable Neglect

The sixth factor considers the possibility that the default resulted from excusable neglect.[26] "There is no indication of excusable neglect" when the defendant has "simply ignored the Summons."[27] Here, the Defendant was properly served with the summons and the Amended Complaint. There is no evidence of excusable neglect.

### Factor No. 7 - Policy for Deciding on the Merits

Although cases should be decided upon their merits whenever possible, this is impossible where a defendant fails to defend an action.[28] Further, "the preference to decide cases on the merits does not preclude a court from granting default judgment."[29] Here, the Defendant chose not to defend this action, and default final judgment is appropriate.

## CONCLUSION

Upon the entry of default, and consideration of a motion for default final judgment, this Court must accept the Trustee's factual allegations in her Amended Complaint as true and draw all reasonable inferences in the Trustee's favor. Considering this, and for the reasons stated above, under *Eitel*, this Court should grant the Trustee's Motion for Default Judgment.

---

[25] *L.A. Gem and Jewelry Design*, 2021 WL 4691151, *7.
[26] *PepsiCo,* 238 F. Supp. 2d at 1177.
[27] *J&J Sports Prod., Inc. v. Tacos La Palma,* 2013 WL 3944132, *2 (D. Nev. July 30, 2013).
[28] *PepsiCo,* 238 F. Supp. 2d at 1177.
[29] *Id*.

DATED: July 18, 2022.

**HARTMAN & HARTMAN**

*/s/Jeffrey L.Hartman, Esq.*
Jeffrey L. Hartman, Esq.
*Attorney for Trustee Christina W. Lovato*

**MELAND BUDWICK, P.A.**

*/s/Solomon B. Genet, Esq.*
Michael S. Budwick, Esq.
Solomon B. Genet. Esq.
Meaghan E. Murphy, Esq.
Gil Ben-Ezra, Esq.
Alexander E. Brody, Esq.
*Attorney for Trustee Christina W. Lovato*

**CERTIFICATE OF SERVICE**

I certify that on July 18, 2022, I caused to be served the following document(s):

**TRUSTEE'S EX PARTE REQUEST FOR ENTRY OF DEFAULT JUDGMENT PURSUANT TO F.R.CIV.P 55(b) AND F.R.BANKR.P. 7055**

I caused to be served the above-named document(s) as indicated below:

I caused to be served the above-named document(s) as indicated below:

✔ a. Via ECF to:

ALEXANDER E. BRODY abrody@melandbudwick.com,

ltannenbaum@melandbudwick.com;ltannenbaum@ecf.courtdrive.com ;

mrbnefs@yahoo.com

MICHAEL S. BUDWICK   mbudwick@melandbudwick.com,

ltannenbaum@melandbudwick.com;ltannenbaum@ecf.courtdrive.com

SOLOMON B. GENET   sgenet@melandbudwick.com,

ltannenbaum@melandbudwick.com; ltannenbaum@ecf.courtdrive.com

JEFFREY L. HARTMAN   notices@bankruptcyreno.com,

abg@bankruptcyreno.com

CHRISTINA W. LOVATO   trusteelovato@att.net, NV26@ecfcbis.com

✔ b. Via U.S. Mail, postage prepaid, addressed to:

JCB Consulting, Inc. f/k/a J&C Consulting, Inc.
c/o Carrie Sue Boden-Carpoff a/k/a Caroline Sue Boden-Carpoff a/k/a
Carrie Carpoff a/k/a Carrie Boden
15 Cascada
Rancho Santa Margarita, CA 92688

I declare under penalty of perjury that the foregoing is true and correct.

DATED: July 18, 2022.

                            /s/ *Solomon B. Genet, Esq.*
                            Solomon B. Genet, Esq.

| Clear Date | Transferor | Transferee | Cash Disbursements |
|---|---|---|---:|
| 06/25/15 | DC Solar Distribution, Inc. | King Solarman | $ 115,020.00 |
| 08/06/15 | DC Solar Distribution, Inc. | King Solarman | 57,510.00 |
| 08/07/15 | DC Solar Distribution, Inc. | King Solarman | 57,510.00 |
| 08/10/15 | DC Solar Distribution, Inc. | King Solarman | 57,510.00 |
| 08/14/15 | DC Solar Distribution, Inc. | King Solarman | 57,510.00 |
| 08/18/15 | DC Solar Distribution, Inc. | King Solarman | 57,510.00 |
| 10/13/15 | DC Solar Solutions, Inc. | King Solarman Inc | 786,520.00 |
| 10/22/15 | DC Solar Distribution, Inc. | King Solarman | 115,020.00 |
| 12/02/15 | DC Solar Solutions, Inc. | King Solarman Inc | 4,110,000.00 |
| 04/25/16 | DC Solar Solutions, Inc. | King Solarman | 2,648.70 |
| 05/19/16 | DC Solar Solutions, Inc. | King Solarman Inc | 4,176,820.00 |
| 09/02/16 | DC Solar Solutions, Inc. | King Solarman Inc | 3,442,500.00 |
| 01/26/17 | DC Solar Solutions, Inc. | King Solarman Inc | 3,645,000.00 |
| 08/10/17 | DC Solar Solutions, Inc. | King Solarman Inc | 7,290,000.00 |
| 12/27/17 | DC Solar Solutions, Inc. | King Solarman Inc | 7,290,000.00 |
| 09/20/18 | DC Solar Solutions, Inc. | King Solarman Inc | 891,000.00 |
| 09/20/18 | DC Solar Solutions, Inc. | King Solarman Inc | 891,000.00 |
| 11/06/18 | DC Solar Solutions, Inc. | King Solarman Inc | 8,057,500.00 |
| **Total Cash Disbursements** | | | $ **41,100,578.70** |

EXHIBIT 1    Page 1 of 1